**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**TREVOR R. FRYE and
JULIE L. FRYE,**

        Plaintiffs,

**v.**                                     **Civil Action No. 3:10-CV-47
(BAILEY)**

**BANK OF AMERICA, N.A., and
BAC HOME LOANS SERVICING, LP,**

        Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

        Currently pending before the Court are Defendants Bank of America, N.A.'s and

BAC Home Loans Servicing, LP's Motion to Dismiss Plaintiffs' First Amended Complaint

or Alternatively Motion for Summary Judgment [Doc. 17], filed June 4, 2010; and Plaintiffs'

Motion to Strike Defendants' Reply Memorandum or, in the Alternative, for Leave to Submit

a Surreply [Doc. 27], filed July 7, 2010.  The plaintiffs responded to the defendants' motion

to dismiss on June 18, 2010, and the defendants replied on July 2, 2010.  The defendants

responded to the plaintiffs' motion to strike on July 8, 2010, and the plaintiffs replied on July

15, 2010.  The Court has reviewed the record and the arguments of the parties and, for the

reasons set out below, concludes that the defendants' motion to dismiss should be

**GRANTED IN PART** and **DENIED IN PART** and the plaintiffs' motion to strike should be

**GRANTED IN PART** and **DENIED IN PART**.

1

## BACKGROUND

**I.    Factual Allegations**

The plaintiffs, Trevor and Julie Frye, allege the following facts in the challenged First Amended Complaint [Doc. 13].  Prior to 2009, the plaintiffs entered into a home mortgage loan with Countrywide Home Loans ("Countrywide") for the plaintiffs' home located at 103 Virgo Lane, Martinsburg, West Virginia.  ([Doc. 13] at ¶¶ 3-4, 12).

On July 1, 2009, the plaintiffs filed a petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Northern District of West Virginia.  (Id. at ¶ 13).  The debt to Countrywide was listed on the bankruptcy petition, and a notice of the filing of the plaintiffs' bankruptcy was mailed to Countrywide.  (Id. at ¶¶ 14-15).  The notice, which was not returned by the postal service, informed Countrywide that the plaintiffs were represented by counsel with respect to their debts, and provided contact information for the plaintiffs' attorney.

In their bankruptcy petition, the plaintiffs stated their intention to surrender their home.  (Id. at ¶ 19).  Prior to October 21, 2009, the plaintiffs vacated their home.  (Id. at ¶ 20).  On October 21, 2009, the bankruptcy court granted a discharge of the plaintiffs' debts.  (Id. at ¶ 21).  A copy of the discharge order was sent to Countrywide and was not returned by the postal service.  (Id. at ¶¶ 22-23).  As the plaintiffs' had surrendered their home, the debt owed to Countrywide was also discharged on October 21, 2009.  (Id. at ¶ 24).

Upon information and belief, at some time in the fall of 2009, Bank of America, N.A. ("BofA") or BAC Home Loans Servicing, LP ("BAC" or, collectively, "BofA"), or both entities, acquired either the plaintiffs' loan with Countrywide or the servicing rights to that loan.  (Id.

at ¶ 25).  At the time of this acquisition, the plaintiffs were either in default of the loan or the loan debt had been discharged in the plaintiffs' bankruptcy proceeding.  (Id. at ¶ 15).  Upon information and belief, BofA obtained the loan when it was in default solely for the purpose of facilitating the collection of the debt for others.  (Id. at ¶ 16).

On December 8, 2009, BofA sent a letter directly to each plaintiff for the purpose of collecting the loan debt.  (Id. at ¶¶ 28-35).  In response, on December 16, 2009, counsel for the plaintiffs sent a letter to BofA, informing BofA that: (1) the plaintiffs were represented by an attorney with respect to the debt, (2) the plaintiffs had vacated the property which was the subject of the debt, and (3) the plaintiffs' debt had been discharged.  (Id. at ¶¶ 36-38).

On January 25, 2010, BofA sent a statement directly to the plaintiffs at their current home address, stating: (1) that the plaintiffs had a negative escrow balance; (2) the date and amount on which a payment was due; and (3) that if a payment was not received by February 16, 2010, then a late fee charge might be assessed.  (Id. at ¶ 40).  The statement also included payment instructions, a payment coupon, and a return envelope.  (Id.).

On February 25, 2010, BofA sent an identical statement directly to the plaintiffs, except that this statement demanded payment by March 16, 2010.  (Id. at ¶ 44).

On April 6, 2010, BofA sent a notice directly to the plaintiffs, stating that if the plaintiffs did not provide proof of insurance for the property which was the subject of the debt within 30 days, then BofA would impose upon the plaintiffs a charge of $1,509.00.  (Id. at ¶ 48).

On April 20, 2010, BofA sent an identical notice directly to the plaintiffs, except that this notice demanded that the plaintiffs provide proof of insurance to BofA by May 25, 2010.

(Id. at ¶ 51).

## II.   Procedural History

On March 12, 2010, the plaintiffs brought suit in the Circuit Court of Berkeley County, West Virginia against Bank of America, N.A. ("BofA") or BAC Home Loans Servicing, LP ("BAC" or, collectively, "BofA"),[1] pursuant to the West Virginia Credit and Consumer Protection Act ("WVCCPA"), W.Va. Code § 46A-2-122, *et seq.*  On April 16, 2010, BofA removed the above-styled action to the United States District Court for the Northern District of West Virginia based upon diversity jurisdiction [Doc. 3].

On May 7, 2010, BofA filed a Motion to Dismiss [Doc. 6], arguing that the plaintiffs' WVCCPA claims were preempted by the National Bank Act ("NBA").  Relying upon Federal Rule 15(a) of Civil Procedure[2], the plaintiffs filed a First Amended Complaint [Doc. 13], adding claims pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and the bankruptcy discharge provisions of 11 U.S.C. § 524.[3]  The First Amended Complaint contains four counts.[4]

Counts I and II arise under the unfair debt collection and the unfair and deceptive

---

[1]The Court finds that BAC is an "operating subsidiary" of BofA, as defined in 12 U.S.C. § 24a(g)(3)(A).  Accordingly, the rulings below apply to both entities, BofA and BAC.

[2]As a motion to dismiss does not constitute a responsive pleading, the plaintiffs could still amend their Complaint as of right pursuant to Rule 15(a).

[3]In light of the filing of the plaintiffs' First Amended Complaint, this Court denied without prejudice the defendants' Motion to Dismiss [Doc. 15].

[4]This Court notes that the claims are not set forth in the First Amended Complaint as numbered counts.  Instead, they are labeled "First Claim For Relief," and so forth.  For ease of reference, each claim for relief will be called a "Count" in this Memorandum Opinion and Order.

practices provisions of the WVCCPA.  ([Doc. 13] at ¶¶ 53, 65).  In Count I, the plaintiffs allege that each of the letters sent by BofA on December 8, 2009, is a separate violation of W.Va. Code § 46A-2-128(e), as BofA knew as of that date that the plaintiffs were represented by counsel with respect to the debt.  (Id. at ¶ 59).  In addition, the plaintiffs allege that each of the December 8, 2009, letters is a separate fraudulent, deceptive, or misleading representation of the character, extent, or amount of BofA's claim against the plaintiffs, in violation of W.Va. Code § 46A-2-127(d). (Id. at ¶ 60).  Next, the plaintiffs allege that each of the statements and notices sent by BofA to the home of the plaintiffs after December 8, 2009, is a separate violation of W.Va. Code § 46A-2-128(e), as BofA knew as of that date that the plaintiffs were represented by counsel with respect to the debt.  (Id. at ¶ 61).  Further, the plaintiffs allege that each of the statements and notices sent by BofA after October 21, 2009, is a violation of W.Va. Code § 46A-2-128(d), as BofA attempted to impose charges, fees, and expenses on the plaintiffs though any obligation the plaintiffs may have had under the loan agreement had been terminated and discharged by the bankruptcy court. (Id. at ¶ 62).  Finally, the plaintiffs allege those statements and notices sent after October 21, 2009, were also fraudulent, deceptive, or misleading misrepresentations of the character, extent, or amount of BofA's claim against the plaintiffs, in violation of W.Va. Code § 46A-2-127(d).  (Id. at ¶ 63).

In Count II, the plaintiffs allege that each of the statements and notices sent by BofA after October 21, 2009, is an unfair and deceptive practice prohibited by W.Va. Code § 46A-6-104.  (Id. at ¶ 68).

Count III arises under the FDCPA and is based upon the same factual allegations complained of in Counts I and II.  (Id. at ¶ 70).  In Count III, the plaintiffs allege that each

of the demands for payment made after discharge is a false representation of the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A). (Id. at ¶ 73). Similarly, the plaintiffs allege that each of the demands for payment of a late charge is a false representation of the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A). (Id. at ¶ 74). Likewise, the plaintiffs allege, each of each of the threats to impose a penalty for failure to provide proof of insurance is a false representation of the character, amount, or legal status of a debt, in violation of 15 U.S.C. § 1692e(2)(A). (Id. at ¶ 75). Finally, the plaintiffs allege that each of the demands for payment of a late charge, and each threat to impose a penalty concerning proof of insurance, is an unfair or unconscionable practice, in violation of 15 U.S.C. § 1692f(1). (Id. at ¶¶ 76-77).

Count IV arises under the bankruptcy discharge provisions of 11 U.S.C. § 524. (Id. at ¶ 80). In Count IV, the plaintiffs allege that each of BofA's communications directed to the plaintiffs their October 21, 2009, discharge was a violation of the discharge injunction entered by the bankruptcy court. (Id. at ¶ 82). The plaintiffs demand actual damages, statutory damages pursuant to the WVCCPA and FDCPA, exemplary damages for the alleged bankruptcy violation, and attorney's fees. (Id. at 10).

On June 4, 2010, BofA filed the pending Motion to Dismiss [Doc. 17]. In its motion, the defendants argue that the plaintiffs fail to state a claim upon which relief can be granted. ([Doc. 14] at 1-2). First, BofA argues that the plaintiffs' WVCCPA claims in Count I and II are preempted by the National Bank Act, regulations of the Office of the Comptroller of the Currency, and the Bankruptcy Code. (Id. at 1). Second, BofA argues that the plaintiffs' FDCPA claims in Count III fail, as the FDCPA is inapplicable because the Act

does not regulate creditors or their affiliates, and that the FDCPA claims are otherwise barred by the plaintiffs' bankruptcy claims. (Id.). Finally, BofA argues that Count V cannot succeed because 11 U.S.C. § 524 provides no private right of action. (Id. at 2). As such, BofA request that this Court dismiss the Complaint with prejudice. (Id.).

On June 18, 2010, the plaintiffs filed their Response [Doc. 19], asserting that they have successfully stated a claim upon which relief may be granted. ([Doc. 16] at 1). In particular, the plaintiffs argue that their WVCCPA claims are not preempted, the Bankruptcy Code does not preclude their FDCPA claims, and that their discharge violation claim should be construed as a request for a finding of contempt. (Id. at 4-20).

On July 2, 2010, BofA filed a Reply [Doc. 26], reasserting its argument that the plaintiffs' state and federal claims should be dismissed. ([Doc. 20] at 1). Again, BofA argues that the WVCCPA claims are preempted and that the FDCPA is inapplicable. (Id. at 2-6). In addition, BofA argues that jurisdiction for violation of a discharge injunction resides in the bankruptcy court. (Id. at 6-7).

On July 7, 2010, the plaintiffs filed the pending Motion to Strike [Doc. 27]. In their motion, the plaintiffs ask the Court to strike BofA's Reply as untimely. ([Doc. 27] at 1). In the alternative, the plaintiffs request leave to file a surreply. In support of this request, the plaintiffs emphasize that BofA's Reply includes two additional exhibits to which the plaintiffs cannot respond absent permission to submit a surreply. (Id.). The plaintiffs include within their motion a proposed Surreply. (See [Doc. 28] at 3-6). In response, BofA argues that their Reply was timely and state that they have no objection to the Court's consideration of the plaintiffs' proposed Surreply. ([Doc. 29] at 1). In reply, the plaintiffs concede their miscalculation of the time within which BofA had to file its Reply and withdraw their request

for a strike.  ([Doc. 31] at 1).  However, the plaintiffs maintain their request that the Court consider its proposed Surreply.  (Id.).[5]

## DISCUSSION

### I.    Motion to Dismiss Standard

In assessing a Rule 12(b)(6) motion for failure to state a claim, the court must accept the factual allegations contained in the complaint as true.  ***Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp.***, 910 F.2d 139, 143 (4th Cir. 1990).  A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is *plausible* on its face."  ***Bell Atl. Corp. v. Twombly***, 127 S.Ct. 1955, 1974 (2007) (emphasis added).

"A complaint need only give 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  ***In re Mills***, 287 Fed.Appx. 273, 280 (4th Cir. 2008) (quoting Fed.R.Civ.P. 8(a)(2)).  "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  ***Id.*** (internal quotations and citations omitted).  "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancements."  ***Ashcroft v. Iqbal***, — U.S. —, 129 S.Ct. 1937, 1949 (May 18, 2009)(internal quotations and

---

[5]Insofar as the plaintiffs have withdrawn their request that this Court strike the Reply of BofA, and BofA does not object to the Court granting the plaintiffs leave to file a surreply, the Court hereby **GRANTS IN PART** the plaintiffs' Motion to Strike **[Doc. 27]**.  As such, the Court has considered the plaintiffs' proposed Surreply in ruling upon BofA's Motion to Dismiss.

citations omitted).

Additionally, a 12(b)(6) motion must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56(c) where "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Here, in addition to the Complaint, the parties have presented to the Court four exhibits: (1) two affidavits of one of BofA's litigation specialists, (2) news articles concerning Countrywide, (3) an affidavit of the plaintiffs' counsel, and (4) the an opinion letter of the Office of the Comptroller of the Currency. In consideration of the 12(b)(6) motion, however, the Court has elected to exclude these exhibits, making a summary judgment standard inapplicable to the defendants' motion. *See* Fed. R. Civ. P. 12(d).

## II.     National Bank Act Preemption Standards

The National Bank Act ("NBA") empowers the Office of Comptroller of the Currency ("OCC") to regulate real estate loans made by national banks. 12 U.S.C. § 371(a). Under this authority, the OCC promulgated a preemption regulation in 12 C.F.R. § 34.4 (the "Regulation"), which is entitled to "no less pre-emptive effect than federal statutes." *Fidelity Fed. Sav. and Loan Ass'n v. de las Cuesta*, 458 U.S. 141, 153 (1982). The Regulation provides that:

> Except where made applicable by Federal law, *state laws* that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending powers *do not apply to national banks*.

12 C.F.R. § 34.4(a) (emphasis added).

In section 34.4(a), the OCC provided illustrative examples of the types of state laws preempted. "Specifically, a national bank may make real estate loans . . . without regard

to state law limitations concerning:

> (4) The terms of credit, including schedule for repayment of principal and interest, amortization of loans, balance, payments due, minimum payments, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
>
> . . .
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages;
>
> . . .

12 C.F.R. § 34.4(a)(4) and (10).

Moreover, the OCC expressly provided, in section 34.4(b), categories of state laws that "apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers . . .." 12 C.F.R. § 34.4(b). The subjects listed include contracts and torts among other areas of law traditionally controlled by the states.

Finally, courts addressing the issue of NBA preemption have adopted the analysis outlined by the Office of Thrift Supervision ("OTS") for considering the preemptive effect of a nearly identical regulation promulgated under the Home Owners' Loan Act of 1933 ("HOLA") concerning the application of state laws to federal thrifts. *See e.g., O'Donnell v. Bank of Am., N.A.*, No. C-07-04500, 2010 U.S. Dist. LEXIS 23641, *14 (N.D. Cal. Mar. 15, 2010). The OTS analysis provides, as follows:

> When analyzing the status of state laws under [the Regulation], the first step will be to determine whether the type of law in question is listed in [the Regulation's illustrative examples of the types of state laws preempted]. If so, the analysis will end there; the law is preempted. If the law is not covered [by one of the illustrative examples], the next question is whether the law affects lending. If it does, then . . . the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be

> shown [to have, at most, only an incidental effect on lending operations.] Any
> doubt should be resolved in favor of preemption.

OTS, *Lending and Investment*, 61 Fed.Reg. 50951, 50966-67 (Sept. 30, 1996); *see also*

***Silvas v. E\*TRADE Mortg. Corp.***, 514 F.3d 1001, 1005 (9th Cir. 2008).

**III.    Analysis**

BofA moves to dismiss all four counts of the plaintiffs' First Amended Complaint.

Specifically, BofA contends that Counts I and II must fail because the plaintiffs' state law

claims are preempted by the NBA, the Regulation, and the Bankruptcy Code.  According

to BofA, Count III must also fail because the FDCPA is inapplicable, or any claim

thereunder is otherwise barred by the plaintiffs' bankruptcy claims.  Finally, BofA argues

that the Court lacks jurisdiction to grant the relief requested in Count IV.  The Court will now

consider each claim in turn.

**A.    State Law Claims: WVCCPA**

In Count I, the plaintiffs allege that BofA's letters and demands for payments after

notice that they had an attorney are unfair debt collections under the WVCCPA, as are

BofA's contacts after notice of the discharge injunction.  In Count II,  the plaintiffs allege

that BofA's contacts after notice of the discharge injunction are also unfair and deceptive

practices under the WVCCPA.

In considering whether any of these claims are preempted by the NBA, the Court will

first determine whether a claim matches one of the examples provided in section 34.4(a).

If so, the claim is preempted.  Alternatively, the Court will determine whether a claim fits

within the permissible state law claims laid out in section 34.4(b), by analyzing whether the

state law has, at most, only an incidental effect on lending.

### 1.     Contact after Notice of Attorney Representation

In Count I, the plaintiffs claim that the letters sent on December 8, 2009, and the demands for payment made thereafter, constituted violations of W.Va. Code § 46A-2-128(e), which generally prohibits a debt collector from communicating with a consumer whenever it "appears" or "could be easily ascertained" that he or she is represented by an attorney.[6]  In support of this claim, the plaintiffs allege that BofA knew as of July 1, 2009, and were reminded on December 16, 2009, that the plaintiffs were represented by counsel with respect to the debt.

In its motion, BofA argues that the NBA preempts these claims because restricting to whom BofA may communicate regarding its mortgage loans implicates the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" by national banks.  12 C.F.R. § 34.4(a)(10).  Specifically, BofA argues, such a restriction interferes with its "servicing" of mortgage loans.  In support of this argument, BofA cites **Padgett v. OneWest, FSB**, No. 3:10-CV-08, 2010 U.S. Dist. LEXIS 38293, *27 (N.D. W.Va. Apr. 19, 2010), in which this Court found a nearly identical claim against OneWest, F.S.B. ("OneWest"), preempted under the HOLA because W.Va. Code § 46A-2-128(e) implicated the servicing of the plaintiff's loan.

In response, the plaintiffs argue that crucial to the Court's holding in **Padgett** was

---

[6]In Count I, the plaintiffs also allege that the December 8, 2009, letters constituted fraudulent, deceptive, or misleading representations of the character, extent, or amount of BofA's claim against the plaintiffs, in violation of W.Va. Code § 46A-2-127(d).  However, the plaintiffs provide no support for this claim.  Presumably, the plaintiffs are arguing that the December 8, 2009, letters misrepresented the character of their loan debt based upon the bankruptcy court's discharge of the debt.  Therefore, the Court will consider said claim will be considered along with the plaintiffs' claim that each statement and notice sent after the discharge is a violation of W.Va. Code § 46A-2-127(d).

that the burden imposed by W.Va. Code § 46A-2-128(e) more than incidentally affected OneWest's lending operations. However, the plaintiffs contend, the Fair Debt Collecting Practices Act ("FDCPA") imposes an identical burden on BofA regarding its contact of represented consumers. As such, the state provision should not be preempted.

In reply, BofA argues first that the FDCPA is inapplicable because it is the "creditor" of the plaintiffs' loan, not a "debt collector" as defined by the Act. In support of this argument, BofA argues that the plaintiffs' loan was not in default when it acquired the loan.

Upon consideration of the above, this Court finds that W.Va. Code § 46A-2-128(e) is preempted by the NBA. First, the Court agrees that restricting to whom BofA may communicate regarding its mortgage loans implicates the "[p]rocessing, origination, servicing, sale or purchase of, or investment or participation in, mortgages" by national banks. *See* 12 C.F.R. § 34.4(a)(10). On this basis alone, preemption is warranted. Alternatively, this Court finds that the undertaking required by the language "appears" would more than incidentally affect lending. *See* 12 C.F.R. § 34.4(b). In so finding, this Court concludes that the FDCPA's application to BofA, if it all, has no effect on the issue of preemption. The FDCPA prohibits a debt collector from communicating with a debtor it "knows" is represented by an attorney, whereas the WVCCPA prohibits communication whenever it "appears" that a consumer has attorney representation. *Compare* 15 U.S.C. § 1692c(a), *with* W.Va. Code § 46A-2-128(e). Pursuant only to the latter provision would a debt collector violate the law because it *should have known*, from appearances, that a consumer was represented by an attorney. Therefore, this Court finds that W.Va. Code § 46A-2-128(e) imposes a heavier burden than the FDCPA, and thus, more than incidentally affects lending. As such, W.Va. Code § 46A-2-128(e) is preempted by the NBA.

13

Accordingly, this Court hereby **DISMISSES** Count I insofar as it is based upon said provision.

### 2. Contact after Discharge Injunction

In Counts I and II, the plaintiffs allege three violations of the WVCCPA based upon BofA's contact after the bankruptcy court's entry of the discharge injunction. First, in Count I, the plaintiffs claim that the demands for payment after October 21, 2009, violated W.Va. Code § 46A-2-128(d), which declares unfair or unconscionable "[t]he collection or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating the obligation and by statute . . .." In support of this claim, the plaintiffs allege that BofA knew as of that date that the plaintiffs' debt had been discharged, yet in demanding payment, BofA threatened the imposition of late payment fees.

Second, in Count I, the plaintiffs claim that the demands for payment after October 21, 2009, were fraudulent, deceptive, or misleading representations of the character, extent, or amount of BofA's claim against the plaintiffs, in violation of W.Va. Code § 46A-2-127(d). In support of this claim, the plaintiffs cite the discharge injunction.

Third, in Count II, the plaintiffs claim that the demands for payment after October 21, 2009, also violated W.Va. Code § 46A-6-104, which declares unlawful, "unfair or deceptive acts or practices in the conduct of any trade or commerce . . .." In support of this claim, the plaintiffs again cite the discharge injunction.

In its motion, BofA argues, *inter alia*, that the Bankruptcy Code preempts these claims insofar as they rely upon alleged violations of the bankruptcy court's discharge

injunction.  In response, the plaintiffs assert that none of these claims implicates the Bankruptcy Code, or any of its remedies, because none of the late fees threatened were involved in the bankruptcy proceeding.  Instead, the plaintiffs argue, threatening the imposition of late fees violated the terms of the mortgage loan.  In reply, BofA argues that the plaintiffs' allegation that the loan agreement had been terminated and discharged by the bankruptcy court forecloses any argument that these claims are essentially contract-based.

Upon consideration of the above, this Court finds that W.Va. Code §§ 46A-2-128(d), 46A-2-127(d), and 46A-6-104 are preempted by the Bankruptcy Code.[7]  In so finding, this Court finds persuasive the opinion of **Johnston v. Telecheck Servs. (In re Johnston)**, 362 B.R. 730 (Bankr. N.D. W.Va. 2007).

In **Johnston**, the debtor sought damages for violation of the discharge injunction and alleged that Telecheck violated W.Va. Code § 46A-2-124(c) for attempting to collect a debt using false accusations, and W.Va. Code § 46A-2-127(d) for using a false representation concerning the extent or the amount of the claim against the debtor when the underlying claim had been discharged.  **Id.** at 732.   In finding the state provisions preempted by the Bankruptcy Code, the court emphasized that Congress intended 11 U.S.C. § 524 to provide the exclusive remedy for a violation of the discharge injunction.[8]

---

[7]Insofar as this Court has found W.Va. Code §§ 46A-2-128(d) and 46A-6-104 are preempted by the Bankruptcy Code, the Court finds unnecessary any discussion of NBA preemption.

[8]In particular, a suit for violation of section 524(c) can be brought only as a contempt action under section 524(a)(2).  *See* **Cox v. Zale Del., Inc.**, 239 F.3d 910, 917 (7th Cir. 2001)

*Id.* at 739.  Moreover, the court continued, "considering that § 524 does not accord the

Debtor with a private right of action for a violation of the discharge injunction, it would be

improper for the court to recognize one based in State law."  *Id.*

Like the debtor in ***Johnston***, the plaintiffs seek damages for violations of 11 U.S.C.

§ 524(c) and certain provisions of the WVCCPA, based upon debt collection efforts

subsequent to the entry of the Bankruptcy Code's discharge injunction.[9]  That the plaintiffs'

WVCCPA claims are based upon allegations that BofA threatened the imposition of late

fees does not prevent a finding of preemption.  No matter the form of WVCCPA violation

alleged, the dispositive factor is that the plaintiffs rely upon violations of the discharge

injunction to support their claims under W.Va. Code §§ 46A-2-128(d), 46A-2-127(d), and

46A-6-104.  As explained in ***Johnston***, allowing such claims to proceed would directly

contravene "Congressional exclusivity in the field of bankruptcies."  ***Johnston***, 362 B.R.

730, 739. Therefore, in furtherance of Congress' intent, this Court finds that W.Va. Code

§§ 46A-2-128(d), 46A-2-127(d), and 46A-6-104 are preempted by 11 U.S.C. § 524.

Accordingly, this Court hereby **DISMISSES** Counts I and II insofar as they are based upon

said provisions.

---

[9]The Court is unpersuaded by the plaintiffs' argument that their WVCCPA claims are based upon alleged violations of their loan contract.  In fact, as BofA points out, the plaintiffs allege that the bankruptcy court's discharge effected a termination of the loan contract.  (See [Doc.13] at ¶ 62).  Moreover, by narrowing their allegation to include only the demands for payment made after October 21, 2009, the date of discharge, the plaintiffs cannot argue they are not relying upon alleged violations of the discharge injunction to support their WVCCPA claims.  (See Id. at ¶¶ 62-63, 68).

**B.    Federal Law Claims**

**1.    FDCPA**

In Count III, the plaintiffs claim that BofA's actions in its role as a "debt collector" resulted in five violations of the FDCPA.  First, the plaintiffs allege that each of the demands for payment after the discharge of the debt constituted violations of 15 U.S.C. § 1692e(2)(A), which prohibits a debt collector from falsely representing the character, amount, or legal status of any debt.  Second, the plaintiffs allege that each threat to impose late fees similarly violated 15 U.S.C. § 1692e(2)(A).  Third, the plaintiffs allege that each threat to impose a penalty regarding proof of insurance also violated 15 U.S.C. § 1692e(2)(A).  Fourth, the plaintiffs allege that the threats to impose late fees constituted an unfair or unconscionable practice under 15 U.S.C. § 1692f(1).  Finally, the plaintiffs allege that each threat to impose a penalty regarding proof of insurance also constituted an unfair or unconscionable practice under 15 U.S.C. § 1692f(1).

In its motion, BofA argues that the FDCPA is inapplicable because BofA is not a "debt collector," but the "creditor" of the plaintiffs' mortgage loan.  In support of this argument, BofA cites an affidavit of one of its litigation specialists, Barbara Travis, which purports to show that BofA is the creditor or the plaintiffs' mortgage loan [Doc. 14-1].  Alternatively, BofA argues that insofar as the plaintiffs' FDCPA claims are based upon violations of either the automatic stay or the discharge injunction, said claims are barred.

In response, the plaintiffs first argue that Congress has not expressed a clear intent that the FDCPA is superceded by the Bankruptcy Code, nor is it impossible to give effect to both sets of federal laws.  Second, the plaintiffs argue that they have alleged facts which, if proven, would make BofA a "debt collector" within the meaning of the FDCPA.  In support

17

of this argument, the plaintiffs emphasize that they alleged BofA acquired their mortgage loan from Countrywide while the loan was in default, a factor the FDCPA weighs in favor of finding an entity acted as a "debt collector." *See* 15 U.S.C. § 1692a(6)(F)(iii). As such, the plaintiffs contend, a ruling regarding whether BofA acted as a "debt collector" is premature before discovery can be conducted on the issue.

In reply, BofA reasserts that the FDCPA is inapplicable, contending that BofA did not acquire or purchase loans from Countrywide or receive them by assignment or transfer, while in default or otherwise. In support of this contention, BofA cites a second Affidavit of Barbara Travis and Conditional Approval Letter #900 from the OCC [Doc. 20-1], which purport to show that BofA stepped into the role of "creditor" of the plaintiffs' mortgage loan by way of a merger with Countrywide.

In surreply, the plaintiffs argue that BofA's Reply and exhibits thereto are not dispositive as to whether the FDCPA is applicable because neither states exactly what interest Countrywide held in the plaintiffs' mortgage loan prior to the merger, or what interest BofA now holds.

Upon consideration of the above, this Court finds that any ruling as to whether BofA acted as the "debt collector" of the plaintiffs' mortgage loan is premature. First, on a motion to dismiss, this Court must accept as true the plaintiffs' allegation that BofA acquired their mortgage loan while in default. Second, while BofA argues that it merged with Countrywide, thereby becoming a successor in interest, the issue presented by the FDCPA is whether BofA succeeded as owner of the plaintiffs' loan. This requires knowledge of the interest Countrywide had in the plaintiffs' loan prior to a merger as well as knowledge of the interest BofA acquired as a result of the merger. Those issues remain somewhat unclear.

Therefore, at this stage of the litigation, this Court cannot adequately determine whether BofA acted as a "debt collector" of the plaintiffs' loan.  Accordingly, the Court **ORDERS** that the plaintiffs' FDCPA claims, or Count III, **MAY PROCEED** until the completion of discovery at which point this Court will, if necessary, re-address the issue on a summary judgment posture.

### 2.    Bankruptcy Code

In Count IV, the plaintiffs claim that the demands for payment made after the discharge injunction violate 11 U.S.C. § 524.  As this claim arises under the Bankruptcy Code, this Court must determine its jurisdiction to adjudicate the claim.

The district courts have original jurisdiction over bankruptcy proceedings.  28 U.S.C. § 1334.  However, each district court may provide that all bankruptcy proceedings shall be referred to the bankruptcy judge for that district.  28 U.S.C. § 157(a).  Bankruptcy courts are, in fact, units of the district court.  28 U.S.C. § 151.  By Order entered on December 23, 1982, and by subsequent Order entered on August 24, 1984, this district has referenced all bankruptcy proceedings to the sole bankruptcy judge for this district.

At its discretion, the district court may – on its own motion for cause shown – withdraw the order of reference to the bankruptcy court and exercise its original jurisdiction over an individual bankruptcy proceeding.  28 U.S.C. § 157(d).  Cause exists in this case to withdraw the Order of Reference because judicial efficiency requires that this Court retain Count IV (Bankruptcy Code) so as not to separate that count from Count III (FDCPA), which this Court ordered above may proceed.  Therefore, it is **ORDERED** that the Orders of Reference dated December 23, 1982, and August 24, 1984, be and are

hereby **WITHDRAWN** solely with regards to the plaintiffs' Bankruptcy Code claim in Count IV.

In Count IV, the plaintiffs claim that demands for payment made after the discharge of the debts violated 11 U.S.C. § 524, which prohibits a creditor from attempting to collect on a debt that has been discharged in a bankruptcy proceeding.  In support of this claim, the plaintiffs allege that BofA demanded payment after receiving notice of the discharge.

In its motion, BofA argues that this claim should be dismissed because section 524 provides for no private cause of action.  The plaintiffs respond that their section 524 claim should be construed as a request for a finding of contempt.  In reply, BofA asserts that jurisdiction for contempt in connection with the discharge injunction lies solely in the bankruptcy court that issued the injunction.

Though the Court recognizes that section 524 provides no private cause of action, and that a violation of the discharge injunction is punished by contempt of court, *see Johnston v. Telecheck Servs. (In re Johnston)*, 362 B.R. 730, 741 (Bankr. N.D. W.Va. 2007), this Court exercises its discretion in furtherance of judicial economy to construe the plaintiffs' section 524 claim as one for contempt.  *See Motichko v. Premium Asset Recovery Corp.*, 395 B.R. 25, 31 (Bankr. N.D. Ohio 2008) (construing a cause of action under section 524 as a contempt action).

Upon consideration of the above, the Court finds that the plaintiffs have sufficiently stated a claim for civil contempt.  Determining whether a party may be held liable for civil contempt is a two-part inquiry:  (1) did the party know of the lawful order of the court; and (2) did the defendant comply with it.  *Johnston*, 362 B.R. 730, 741 (citing *Burd v. Walters*

*(In re Walters)*, 868 F.2d 665, 670 (4th Cir. 1989).  Here, the plaintiff alleges that BofA demanded payment after receiving notice of the discharge injunction.  The Court finds that this allegation suffices to survive a motion to dismiss.  Accordingly, this Court **ORDERS** that Count IV **MAY PROCEED**.

## CONCLUSION

For the foregoing reasons, the Court finds that the defendants' Motion to Dismiss **[Doc. 17]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**.  In addition, the Court finds that the plaintiffs' Motion to Strike **[Doc. 27]** should be, and hereby is, **GRANTED IN PART** and **DENIED IN PART**.

It is so **ORDERED**.

The Clerk is hereby directed to transmit copies of this Order to counsel of record.

**DATED**: August 16, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE